# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| INGRID RAGANOVA,<br><br>Plaintiff(s),<br><br>v.<br><br>UNITED AIRLINES, INC., UNITED AIRLINES HOLDINGS, INC., GARRETT FOSTER, STACY KATZ, & JOHN DOES 1-100,<br><br>Defendants. | Civil Action No.: 2:24-cv-09096<br><br>**JOINT PROPOSED DISCOVERY PLAN** |

1.  Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

| | |
|---|---|
| David R. Castellani, Esq.<br>Castellani Law Firm, LLC<br>450 Tilton Road, Suite 245<br>Northfield, NJ 08225<br>Telephone: (609) 641-2288<br>Facsimile: (609) 641-2299<br>*Attorneys for Plaintiff* | Suzanne M. Cerra, Esq.<br>Sheryl Reba, Esq.<br>Jean Schroll Knapp, Esq.<br>26 Main Street, Suite 202<br>Chatham, New Jersey 07928<br>Telephone: (973) 665-9100<br>Facsimile: (973) 665-9101<br>*Attorneys for Defendant United Airlines, Inc.*[1] |

2.  Set forth a brief description of the case, including the causes of action and defenses asserted.

**Plaintiff Ingrid Raganova's Description:**

**Plaintiff Ingrid Raganova has been employed with the defendants United Airlines, Inc. United Airlines Holdings, Inc. as a flight attendant for approximately 27 years and remains an employe of United to this day.**

**United Airlines has received a multitude of complaints from Plaintiff in relation to policies not being followed, FAA violations, and safety violations, only for Plaintiff to be retaliated against, demoted from a purser position back down to a flight attendant position, and eventually be labeled**

---

[1] To date, only United Airlines, Inc. has been served. As such, this Joint Discovery Plan is being submitted on behalf of Defendant United only.

a "snitch," in a social media posting. Since this social media posting was issued to what is believed to be approximately 25,000 flight attendants within the Defendants' network, Plaintiff has noticed she has been treated significantly worse and is being subjected to an extremely toxic work environment and met with hostility on almost every flight she has to take. Plaintiff is being addressed with confrontational tones from people she has never met before, and even stared at and pointed at by flight attendants speaking in low tones in the crew room and airport terminals.

Individually, Defendants Foster and Katz have been placed on notice of the multitude issues Plaintiff has reported, and as a result have targeted Plaintiff for complaining of safety issues.

Other flight attendants have been overheard stating, "we have to get rid of these 'senior mamas,'" making reference to the Plaintiff's age as well. Plaintiff has been treated disparately as a result of her age by younger crew members continuously.

The Defendants have created a hostile work environment and retaliated against Plaintiff for allegedly reporting safety concerns in violation of the Conscientious Employee Protection Act ("CEPA"), and Defendants demoted Plaintiff due to her age (fifty-two) in violation of the New Jersey Law Against Discrimination ("NJLAD").

**Defendant United's Description:**

Plaintiff, a current employee of Defendant United Airlines, Inc. ("United"), has asserted the following claims: (1) that Defendants United, Garrett Foster ("Foster"), and Stacy Katz ("Katz") (collectively, "Defendants") created a hostile work environment and retaliated against Plaintiff for allegedly reporting safety concerns in violation of the Conscientious Employee Protection Act ("CEPA"), and (2) Defendants demoted Plaintiff due to her age (fifty-two) in violation of the New Jersey Law Against Discrimination ("NJLAD").

United denies Plaintiff's claims in their entirety and will be able to establish non-discriminatory and non-retaliatory reasons for all actions taken in connection with Plaintiff's employment. Plaintiff received a Performance Warning Level 2 effective May 23, 2024, following an altercation during a flight where Plaintiff raised her voice and treated another flight attendant disrespectfully. Following an investigation – where witnesses corroborated the events – United determined that Plaintiff's conduct violated its Working Together Guidelines in the area of professionalism, dignity, and respect. Of note, Plaintiff had previously received a verbal warning in connection with her communications and conduct toward coworkers. As a result of the Performance Warning Level 2, Plaintiff was automatically removed from the International Purser Program pursuant to the Joint Collective Bargaining Agreement. The other flight attendant involved in the incident also received a Performance Warning Level 2.

On June 2, 2024, Plaintiff notified Defendant Stacy Katz of a social media post calling Plaintiff a "snitch". United immediately commenced an investigation but was unable to determine who created the post.[2] The investigation into the social media post –

---

[2] Plaintiff was sent a screenshot of the social media post by another flight attendant. United never

2

**which was initiated *after* Plaintiff received the Performance Warning Level 2 – was unrelated to the disciplinary action against Plaintiff.**

**United's affirmative defenses include, but are not limited to, failure to state a claim on which relief can be granted; failure to state a *prima facie* claim of retaliation under CEPA; failure to mitigate damages; and failure to state a prima facie claim for discrimination. United also denies any liability for damages since its actions were based on legitimate, non-discriminatory/non-retaliatory reasons.**

3. Have settlement discussions taken place?  Yes _____  No  **X**

    (a) What was plaintiff's last demand?

        1) Monetary demand:  **N/A**
        2) Non-monetary demand:  **N/A**

    (b) What was defendant's last offer?

        1) Monetary offer:  **N/A**
        2) Non-monetary offer:  **N/A**

4. The parties [have   **X**   have not_____] met pursuant to Fed. R. Civ. P. 26(f):

5. The parties [have_____ have not  **X**  ] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

    **The parties have agreed to exchange Initial Disclosures by December 20, 2024.**

6. Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).  **None known at this time.**

7. The parties [have_____ have not   **X**   ] filed disclosures of third-party litigation funding. See Local Civil Rule 7.1.1.

8. The parties [have_____ have not  **X**  ] conducted discovery other than the above disclosures. If so, describe.

9. Proposed joint discovery plan:

    (a) Discovery is needed on the following subjects: **Plaintiff's allegations of discrimination and retaliation set forth in the Complaint, Plaintiff's purported internal complaints, Plaintiff's employment and job**

---

received, and no witness provided, the original social media post.

**performance, and Plaintiff's purported damages, including any alleged emotional distress and mitigation efforts. Third-party discovery may also be necessary, including from Plaintiff's medical and/or mental health providers and former or current employers. To the extent Plaintiff identifies any experts, United intend to depose the expert(s) and reserves the right to designate its own experts.**

**United reserves the right to supplement this non-exhaustive list and seek discovery into other areas upon further investigation.**

(b) Discovery [should ____**X**____ should not_____] be conducted in phases or be limited to particular issues. Explain.

**The parties request that expert discovery not occur until after the disposition of any application for summary judgment.**

(c) Proposed schedule:

(1) Fed. R. Civ. P. 26 Disclosures: **December 20, 2024**.

(2) E-Discovery conference pursuant to L. Civ. R. 26.1(d) **January 10, 2025 (subject to further meet and confers pursuant to the parties' respective ESI protocol)**.

(3) Service of initial written discovery: **January 17, 2025.**

(4) Maximum of __**25**__ Interrogatories by each party to each other party.

(5) Maximum of __**5**__ depositions to be taken by each party.

(6) Motions to amend or to add parties to be filed by **30 days following service of discovery responses.**

(7) Factual discovery to be completed by: **January 30, 2026.**

(8) Plaintiff's expert reports due: **30 days after the Court's disposition of dispositive motions.**

(9) Defendant's expert reports due: **90 days after receipt of Plaintiff's expert report(s).**

(10) Expert depositions to be completed: **45 days after Defendant's expert report is due.**

(11) Dispositive motions to be served within __**90**__ days of completion

4

        of **fact** discovery.

    (d)    Set forth any special discovery mechanism or procedure requested.

        **Since Plaintiff resides in Portugal, it is possible that certain records relevant to this matter and United's defenses will be located in Portugal. Once Plaintiff identifies all relevant record holders, United may need to move the Court for Letters of Request and/or Letters Rogatory, and at a later date, may need to move the Court to compel in person depositions in New Jersey.**

    (e)    A pretrial conference may take place on **a date to be determined by the Court**.

    (f)    Trial date: **on a date to be determined by the Court following disposition of summary judgment motion**. (  **X**  Jury Trial; ____Non-Jury Trial).

10.    Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc)? Yes **X**  No___

    If so, please explain.

    **As noted above, it is possible that certain records relevant to this matter will be located in Portugal. Once Plaintiff identifies all relevant record holders, United may need to move the Court for Letters of Request and/or Letters Rogatory, and at a later date, may need to move the Court to compel in person depositions in New Jersey. United anticipates that from the time the Court issues the Letters of Request and/or Letters Rogatory, it may take six months to receive the records.**

    **The extent of the discovery process in Portugal is currently unknown at this time. Additional time may be needed regarding depositions of out of the county witnesses and/or treating providers.**

11.    Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? Yes_____ No __**X**__.

    If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

    **If ESI is necessary, the parties will agree, in writing, to an ESI protocol, which includes that ESI may be in the following formats: e-mail (html); video (mpeg); and document (pdf or doc). Further, to the extent that ESI discovery is sought: (a) the parties may submit all discovery responses in electronic format; and (b) prior to conducting any ESI discovery, the parties shall meet and confer on a list of custodians and search terms. In addition to any proposed formal search terms, the Parties shall comply with all obligations under the Federal Rules to search for and**

**produce responsive documents they know to exist pertaining to the document demands served.**

12. Do you anticipate entry of a Discovery Confidentiality Order? <u>See</u> L.Civ.R. 5.3(b) and Appendix S.  **Yes**

13. Do you anticipate any discovery problem(s) not listed above? Describe. Yes___ No___**X**___. **Not at this time.**

14. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (<u>i.e.</u>, after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

    **The parties will meet and confer throughout the course of the litigation to see if they believe they would benefit from a neutral mediator.**

15. Is this case appropriate for bifurcation? **Yes - as to punitive damages**   No ___

16. An interim status/settlement conference (with clients in attendance), should be held in **a date to be determined by the Court**.

17. We [do_____ do not___**X**___] consent to the trial being conducted by a Magistrate Judge.

18. Identify any other issues to address at the Rule 16 Scheduling Conference.

    **None at this time.**


*/s/ David R. Castellani*       12/6/2024
Attorney(s) for Plaintiff(s) / Date


/s/ Suzanne M. Cerra       12/6/2024
Attorney(s) for Defendant / Date